MAS-20041213
barbmeli

Case 1:05-cv-11765-DPW    Document 4    Filed 09/01/2005    Page 1 of 29

**Commonwealth of Massachusetts**
**BRISTOL SUPERIOR COURT**
Case Summary
Civil Docket

08/30/2005
11:53 AM

## BRCV2005-00809
## Mendes et al v Cendant Mortgage

| **File Date** | 07/25/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
|---|---|---|---|---|---|
| **Status Date** | 08/29/2005 | **Session** | B - CtRm 2 - (Fall River) | | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | | |
| **Lead Case** | | **Track** | F | | |

| **Service** | 10/23/2005 | **Answer** | 12/22/2005 | | **Rule12/19/20** | 12/22/2005 |
|---|---|---|---|---|---|---|
| **Rule 15** | 12/22/2005 | **Discovery** | 05/21/2006 | | **Rule 56** | 06/20/2006 |
| **Final PTC** | 07/20/2006 | **Disposition** | 09/18/2006 | | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Anthony Mendes
Active 07/25/2005

**Private Counsel 556923**
Christopher J Trombetta
310 North Main Street
Suite 6
Mansfield, MA 02048
Phone: 508-339-5900
Fax: 508-339-3111
Active 07/25/2005 Notify

**Plaintiff**
Doris Mendes
Active 07/25/2005

*** See Attorney Information Above ***

**Defendant**
Cendant Mortgage
Service pending 07/25/2005

**Other interested party**
FILE COPY
Active 07/25/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 07/25/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 07/25/2005 | | Origin 1, Type A01, Track F. |
| 08/29/2005 | 2.0 | Notice for Removal to the United States District Court filed by |

MAS-20041213

barbmeli

Case 1:05-cv-11765-DPW    Document 4    Filed 09/01/2005    Page 2 of 29

**Commonwealth of Massachusetts**
**BRISTOL SUPERIOR COURT**
**Case Summary**
**Civil Docket**

08/30/2005
11:53 AM

## BRCV2005-00809
## Mendes et al v Cendant Mortgage

| Date | Paper | Text |
|------|-------|------|
| | 2.0 | Cendant Mortgage |
| 08/29/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 07/25/2005 | CtRm Main - (Taunton) | Status: by clerk | Event held as scheduled |
| | | Initial One Trial Review | |



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

ANTHONY MENDES
AND DORIS MENDES,

                    Plaintiffs,

          v.

CENDANT MORTGAGE,

                    Defendant.

_____

I hereby certify on _____ that the foregoing document is true and correct copy of the

☐ electronic docket in the captioned case
☐ electronically filed original filed on _____
☒ original filed in my office on _____

Sarah A. Thornton,
Clerk, U.S. District Court
District of Massachusetts

By:_____
Deputy Clerk

## 05  11765 DPW

## NOTICE OF REMOVAL

Please take notice that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant

Cendant Mortgage ("Cendant") hereby removes to this Court the above-captioned action pending

in the Superior Court Department of the Trial Court, Bristol County, Massachusetts.  In support

of removal, Cendant alleges as follows:

          1.  Plaintiffs, Anthony and Doris Mendes (the "Plaintiffs") instituted this civil

action, entitled Anthony Mendes and Doris Mendes v. Cendant Mortgage, Civil Action. No. 05-

809-B, pending in the Superior Court Department of the Trial Court, Bristol County,

Massachusetts (the "Action") on July 25, 2005.  A copy of the Complaint and Civil Action Cover

Sheet filed in the Action are annexed hereto as Exhibits A and B, respectively.  Plaintiffs assert

claims for damages arising from Cendant's alleged breach of contract and unfair and deceptive

acts in violation of section 2 of Mass. Gen. Laws Chapter 93A, in failing to finance the purchase

of a new home.  As stated in the Civil Action Cover Sheet, Plaintiffs assert over $200,000 in

damages as a result of Cendant's alleged misconduct.

          2.  A copy of the Complaint was received by Cendant on August 1, 2005.

     3.  This petition is being filed within thirty (30) days of the date on which

Cendant received the Complaint. This petition is also being filed within one year of the

commencement of the Action and is therefore timely filed under 28 U.S.C. § 1446(b) and Rule

6(a) of the Federal Rules of Civil Procedure.

     4.  This action is a civil action of which this Court has original jurisdiction under

28 U.S.C. § 1332, and is one which may be removed to this Court by defendant Cendant

pursuant to the provisions of 28 U.S.C. § 1441, et seq., because it is a civil action between

citizens of different states and the amount in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs.

     5.  No prior application for the same or similar relief has been made to this or to

any other court.

     6.  Complete diversity of citizenship exists as between the plaintiff and

defendant.

     7.  As set forth in the complaint, Plaintiffs reside at 895 School Street, Mansfield,

Massachusetts. *See* Exhibit A, ¶ 1.

     8.  Defendant Cendant is, and was at the time of the institution of this civil action,

a corporation organized and existing under and by virtue of the laws of the State of New Jersey,

with its principal place of business located in Mount Laurel, New Jersey. Cendant is not now,

and was not at the time of the filing of the Complaint, a citizen or resident of the Commonwealth

of Massachusetts.

     9.  The amount in controversy in this action exceeds the sum or value of

$75,000.00, exclusive of interests or costs. As set forth in the Civil Action Cover Sheet,

Plaintiffs seek damages over $200,000. *See* Exhibit B.

2

10. Plaintiff's claims will undoubtedly exceed $75,000.00. Accordingly, the jurisdictional amount required by 28 U.S.C. § 1332 is satisfied.

WHEREFORE, defendant Cendant Mortgage respectfully requests that the above-captioned action be removed from the Superior Court Department of the Trial Court, Bristol County, Massachusetts, to this Court.

Respectfully submitted,

CENDANT MORTGAGE,
By Its Attorney,

Thomas I. Elkind, BBO #153080
Andrew K. Goldstein, BBO #552239
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts 02199
(617) 342-4000

Dated: August 26, 2005

A True Copy By Photostatic Process
Attest:
Asst. Clerk of Courts

027.168627.1

## CERTIFICATE OF SERVICE

I, Thomas I. Elkind, hereby certify that on this 26th day of August, 2005, I caused the foregoing Defendant's Notice of Removal to be served by first class mail, postage paid, upon the plaintiff's attorney:

Christopher J. Trombetta
Law Office of Christopher J. Trombetta
310 North Main Street
Mansfield, MA 02048

Thomas I. Elkind, Esq.

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.                                                SUPERIOR COURT

---

ANTHONY MENDES
AND DORIS MENDES,

                Plaintiffs,             *     Civil Action No.: B05-809

    v.

CENDANT MORTGAGE,

                Defendant.

---

BRISTOL, SS SUPERIOR COURT
**FILED**

**JUL 25**

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

### COMPLAINT

In this action Plaintiffs, Anthony and Doris Mendes, seek recovery of more than $360,000 from Defendant, Cendant Mortgage, based on Plaintiffs' inability to purchase an income producing property because of Cendant's breach of its agreement to provide financing. Cendant's actions also constitute violations of Mass. Gen. Laws Chapter 93A.

### PARTIES

1. Plaintiffs, Anthony and Doris Mendes, are married and reside at 895 School Street, Mansfield, Massachusetts.

2. Defendant, Cendant Mortgage ("Cendant"), is an entity which provides home equity financing. Upon information and belief, Cendant maintains a place of business at 3000 Leodenhall Road, Mount Laurel, New Jersey.

### THE ALLEGATIONS

3. Mr. and Mrs. Mendes sought home equity financing from Cendant.

4. Cendant directed Mr. and Mrs. Mendes to apply for an FHA loan. Mr. and Mrs. Mendes did so only because Cendant directed them to do so. Mr. and Mrs. Mendes were first time home buyers and relied on the advice of Cendant.

5. Cendant completed a loan application for Mr. and Mrs. Mendes. A true and accurate copy of the application completed by them is attached as Exhibit A.

6. Thereafter, Cendant pre-approved a mortgage in the amount of $307,545. This mortgage contemplated an interest rate of 7.125 percent. A true and accurate copy of this proposal is allocated as Exhibit B.

7. The letter granting $307,545 in the pre-approved financing stated:

We're pleased to tell you that you've been approved for a mortgage loan in the amount of $307,545.00. From here on, getting the home you want will be as easy as 1-2-3. We'll be with you all the way, from the application process right through closing.

Now that your application is already completed and on file with us, all you need to do is find your dream home. As soon as you do, simply call us at 1-800-2 36-3268, Ext. 84853, to give us the property address, and we'll make sure your loan closes right on time – guaranteed. You can use it to call us 7 days a week with any questions about your mortgage process.

<u>Mr. and Mrs. Mendes Select a Home</u>

8. After receiving this letter, Mr. and Mrs. Mendes then located the home which they desired to purchase. The home was located at 1-3 Chilson Street, Mansfield, Massachusetts. This home contained two apartments which they intended to lease. The rental amounts that they would have received amounted to more than $1,500 per month.

9. They then executed a purchase and sale agreement knowing that they had been pre-approved for a mortgage in an amount sufficient to purchase the property. A true and accurate copy of the purchase and sale agreement is attached as Exhibit C.

2

10. The agreed to sales price was $305,000. Mr. and Mrs. Mendes intended to finance $296,000, which was $11,545 less than the pre-approved loan amount of $307,545.

11. The parties scheduled closing to occur in August 2001.

### Cendant Refuses To Finance

12. On the day of the closing, however, Cendant informed Mr. and Mrs. Mendes that it would not provide them with financing.

13. Cendant contended that rents associated with the property to be purchased would not be high enough to satisfy FHA requirements.

14. FHA requirements did not require the rents even to exist, never mind be higher.

15. Mr. and Mrs. Mendes generated sufficient income through employment to qualify for the mortgage.

16. Because of Cendant's refusal to provide financing, Mr. and Mrs. Mendes could not consummate their purchase of the property which they had selected.

17. The owners of 1-3 Chilson Street then sold that property within thirty days of the date on which Mr. and Mrs. Mendes indicated that they could not purchase the property based on the unexpected and wrongful loss of guaranteed financing.

### Mr. and Mrs. Mendes Are Forced to Purchase
### A Different Property That Does Not Produce Income

18. Following the demise of Mr. and Mrs. Mendes' attempt to purchase 1-3 Chilson Avenue, they located a one family dwelling also in Mansfield. They agreed to purchase their home for $269,000.

19. To purchase the home, Mr. and Mrs. Mendes qualified for a mortgage in the amount of $256,400. This interest rate on this loan was 8.625%.

20. Mr. and Mrs. Mendes qualified for this loan without any representation that the property would generate income.

21. The principle and interest payments associated with a $256,400 mortgage at 8.625 percent produces essentially the same principal and interest payment as for a $297,000 loan with an interest rate of 7.125 percent.

22. The addition of rental income to be received by Mr. and Mrs. Mendes to the home located at 1-3 Chilson Street would have provided additional income which would have further enabled their ability to pay the $297,000 mortgage on the Chilson Street property.

Cendant's Contentions After
Failing To Provide Financing

23. Mr. and Mrs. Mendes later claimed that Cendant's acted wrongfully in refusing to provide financing as to the purchase of 1-3 Chilson Street.

24. In response, Cendant claimed that it had proposed that Mr. and Mrs. Mendes utilize conventional financing at or about Cendant refused to provide financing guaranteed by the FHA.

25. Cendant never made any such proposal.

COUNT I
(Breach of Contract)

26. Mr. and Mrs. Mendes incorporate the allegations of Paragraphs 1 through 25 as if fully set forth herein.

27. Cendant agreed to provide Mr. and Mrs. Mendes with $307,545 in financing to purchase a home.

28. Cendant breached that agreement by refusing to provide the insurance.

29. As a result of that breach, Mr. and Mrs. Mendes suffered damages exceeding $120,000.

## COUNT II
### (Breach of Implied Contract)

30. Mr. and Mrs. Mendes incorporated the allegations of Paragraphs 1 through 29 as if fully set forth herein.

31. Cendant represented that it would provide home financing in the amount of $307,545.

32. As a result of this representation, Mr. and Mrs. Mendes did not look for alternative financing, executed an agreement to purchase 1-3 Chilson Street, and paid a $9,000 deposit.

33. Cendant indicated after execution of the purchase and sale agreement as to 1-3 Chilson Street that it would not provide financing.

34. As a result of Cendant's refusal to provide financing, Mr. and Mrs. Mendes suffered damages in excess of $120,000.

## COUNT III
### (Violation of Chapter 93A)

35. Mr. and Mrs. Mendes incorporated the allegations of Paragraphs 1 through 34 as if fully set forth herein.

36. Cendant is engaged in trade and commerce.

5

37. Cendant committed unfair and deceptive acts in violation of Section 2 of Mass. Gen. Laws Chapter 93A.

38. Such actions include, but are not limited to, Cendant's refusal to provide financing to Mr. and Mrs. Mendes and its misrepresentation that it offered to provide conventional financing to them.

39. Cendant's actions were willful.

40. As a result of Cendant's unfair and deceptive acts and policies, Mr. and Mrs. Mendes have suffered monetary damages exceeding $360,000 and emotional harm as well.

WHEREFORE, Mr. and Mrs. Mendes pray that the Court:

1. Enter judgment in favor of Mr. and Mrs. Mendes and against Cendant on Count I in an amount to be determined at trial;

2. Enter judgment in favor of Mr. and Mrs. Mendes and against Cendant on Count II in an amount to be determined at trial;

3. Enter judgment in favor of Mr. and Mrs. Mendes and against Cendant on Count III in an amount to be determined at trial said amount to be trebled, and award attorneys' fees;

4. Award Mr. and Mrs. Mendes interest and costs, which include attorneys' fees; and

5. Award such other and further relief as the Court deems appropriate.

6

ANTHONY AND DORIS MENDES DEMAND A TRIAL BY JURY ON ALL
CLAIMS SO TRIABLE.

ANTHONY AND DORIS MENDES

By their attorney,
LAW OFFICE OF CHRISTOPHER J. TROMBETTA

Christopher J. Trombetta (BBO# 556923)
310 North Main Street, Suite 6
Mansfield, MA 02048
(508) 339-5900

Dated: July 25, 2005

A True Copy By Photostatic Process
Attest:
                              Asst. Clerk of Courts

7

## Cendant Mortgage
## Residential Loan Application

This application is designed to be completed by the customer(s) with the lender's assistance. Customers should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [X] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| MORTGAGE APPLIED FOR: | [ ] VA  [ ] Conventional  [ ] Other: [X] FHA  [ ] FmHA | Agency Case Number 251-2652439 703 | Lender Case No. 0015775950 |
|---|---|---|---|

| Amount $ 302,571.00 | Interest Rate * 7.125 % | No. of Months 360 | AMORTIZATION TYPE: | [X] Fixed Rate  [ ] GPM | [ ] Other (explain): [ ] ARM (type): |
|---|---|---|---|---|---|

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address 1-3 CHILSON AVE MANSFIELD, MA 02048 | County BRISTOL | No. of Units 3 |
|---|---|---|

| Legal Description of Subject Property | Year Built 1951 |
|---|---|

| Purpose of Loan [X] Purchase  [ ] Construction  [ ] Refinance  [ ] Construction-Permanent  [ ] Other (explain): | Property will be: [X] Primary Residence  [ ] Secondary Residence  [ ] Investment |
|---|---|

**CONSTRUCTION OR CONSTRUCTION-PERMANENT LOAN.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**REFINANCE LOAN.**

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements [ ] made [X] to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)    Anthony P Mendes, Doris Mendes | Manner in which Title will be held TENANTS BY THE ENTIRETY | Estate will be held in: [ ] Fee Simple [ ] Leasehold |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) | |
|---|---|

### III. CUSTOMER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name Anthony P Mendes | Borrower's Name Doris Mendes |
|---|---|

| Social Security Number 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 | Home Phone (781) 320-8527 | Age 44 | Yrs. School 0 | Social Security Number 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 | Home Phone (781) 320-8527 | Age 41 | Yrs. School 0 |
|---|---|---|---|---|---|---|---|

| [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents no. 0  ages | | [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents no. 0  ages | |
|---|---|---|---|---|---|

| Present Address 171 Bridge St , DEDHAM MA 02026 | [X] Own [ ] Rent | No. Yrs. | Present Address 171 Bridge St , DEDHAM MA 02026 United States | [ ] Own [X] Rent 7.08 | No. Yrs. |
|---|---|---|---|---|---|

**PREVIOUS ADDRESSES, IF LESS THAN TWO YEARS**

| Former Address 171 Bridge St , DEDHAM MA 02026 United States | [ ] Own [X] Rent 7.08 | No. Yrs. | Former Address | [ ] Own [ ] Rent | No. Yrs. |
|---|---|---|---|---|---|

| Former Address | [ ] Own [ ] Rent | No. Yrs. | Former Address | [ ] Own [ ] Rent | No. Yrs. |
|---|---|---|---|---|---|

* Refer to Rate Contract

Freddie Mac Form 65 10/92
Fannie Mae Form 1003 10/92

CM21 (110900) 01

6/13/2001 4:54 PM

| Borrower | IV. EMPLOYMENT INFORMATION | Co-Borrower |

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| ployer [ ] Self Employed | | Yrs. on this job | Employer [ ] Self Employed | | Yrs. on this job |
| erbend Nursing Home | | 13 | Deutsches Altemheim | | 11.1 |
| Lincoln St SOUTH NATICK MA 01760 United ates  2-9-00 | | Yrs. employed in this line of work/profession | 2222 Center St WEST ROXBURY MA 02132 United States  5-20-91 | | Yrs. employed in this line of work/profession |
| ATES EMPLOYED: From:03/15/2000  To | | 0 | DATES EMPLOYED: From:05/15/1990  To | | 0 |
| Position/Title/Type of Business | | Business Phone | Position/Title/Type of Business | | Business Phone |
| Food Service Director | | (508)653-8330 | Senior Aide | | (617)325-1230 |

PREVIOUS EMPLOYERS IF LESS THAN TWO YEARS

| Employer [ ] Self Employed | Dates | Employer [ ] Self Employed | Dates |
|---|---|---|---|
| Hancock Nursing Home . DORCHESTER MA 02125 United States | 12/01/1998 - 02/01/2000 | Arbor Hospital 49 Robin wood Ave JAMAICA PLAIN MA 02130 United States | 06/01/1997 - 05/03/2001 |
| | Monthly Income $ 2,550.00 | | Monthly Income $ 748.00 |
| Position/Title/Type of Business | Business Phone | Position/Title/Type of Business | Business Phone |
| Food Service Director | (508)617-5222 | Medical Records | (617)522-4400 |

| Employer [ ] Self Employed | Dates | Employer [ ] Self Employed | Dates |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone | Position/Title/Type of Business | Business Phone |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 3,500.00 | $ 2,560.00 | $ 6,060.00 | Rent | 500.00 | |
| Overtime | | 625.00 | 625.00 | First Mortgage (P&I) | | $ 2,038.48 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 30.0( |
| Dividends/Interest | 1,575.00 | 748.00 | 2,323.00 | Real Estate Taxes | | 275.1 |
| Net Rental Income | | | | Mortgage Insurance | | 123.' |
| Other (before completing, see the notice in "describe other income", below) | | | | Homeowner Assn. Dues | | 0. |
| | | | | Other:Other Present | 175.00 | 0 |
| Total | $ 5,075.00 | $ 3,933.00 | $ 9,008.00 | Total | $ 675.00 | $ 2,467 |

DESCRIBE OTHER INCOME    Notice:    Alimony, child support, or separate maintenance income need not be revealed if the
Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

B/C

B    DIVI 1,575.00 DIVI 748.00

## VI. ASSETS AND LIABILITIES

SCHEDULE OF REAL ESTATE OWNED

| Property Address (S = Sold, PS = Pending Sale, R = Rental) | Type Of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Rent |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | |

ADDITIONAL NAMES UNDER WHICH CREDIT HAS PREVIOUSLY BEEN RECEIVED

| Alternate Name | Creditor Name | Accoun' |
|---|---|---|
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and their liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ x ] Jointly [ ] Not Jointly

| ASSETS<br>Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase | $ | | | | |
| | | **LIABILITIES** | | | |
| BANKS, S & L, CREDIT UNIONS | | CROSS COUNTRY BANK | | $ Payt./Mos. | $ |
| CITIZENS | | | | 35.00 | 564.00 |
| SAVE | 10,000.00 | Acct. no. 541490707051 | | 16 | |
| | | CROSS COUNTRY BANK | | $ Payt./Mos. | $ |
| | | | | 60.00 | 3,037.00 |
| | | Acct. no. 422709728342 | | 51 | |
| TOTAL | $ 10,000.00 | FIRST CONSUMERS NATL B | | $ Payt./Mos. | $ |
| CITIZENS | | | | 78.00 | 3,091.00 |
| CHCK | 1,100.00 | Acct. no. 5421160701035877 | | 40 | |
| | | BANK OF AMERICA | | $ Payt./Mos. | $ |
| | | | | 48.00 | 2,199.00 |
| | | Acct. no. 431903000676 | | 46 | |
| TOTAL | $ 1,100.00 | GECCCC/BEST BUYS | | $ Payt./Mos. | $ |
| CREDIT UNION | | | | 43.00 | 2,175.00 |
| SAVE | 3,000.00 | Acct. no. 6019170018539939 | | 51 | |
| | | CAPITAL ONE FSB | | $ Payt./Mos. | $ |
| | | | | 37.00 | 682.00 |
| | | Acct. no. 5291071657319685 | | 18 | |
| TOTAL | $ 3,000.00 | WM FILENE | | $ Payt./Mos. | $ |
| | | | | 180.00 | 950.00 |
| | | Acct. no. 549852358 | | 5 | |
| | | GECCCC/BEST BUYS | | $ Payt./Mos. | $ |
| | | | | 40.00 | 1,807.00 |
| | | Acct. no. 6019170014830902 | | ' 45 | |
| TOTAL | $ | HHLD BANK | | $ Payt./Mos. | $ |
| Stocks & Bonds | $ | | | 15.00 | 30.00 |
| | | Acct. no. 0-0100189227 | | 2 | |
| | | MACYS EAST/FDSB | | $ Payt./Mos. | $ |
| Gift | | | | 29.00 | 1,150.00 |
| | | Acct. no. 4220533883120 | | 40 | |
| | | WFNNB/LIMITED TOO | | $ Payt./Mos. | $ |
| Life insurance net cash value | $ | | | 6.00 | 136.00 |
| Face amount: $ | | Acct. no. 980998447 | | 23 | |
| SUBTOTAL LIQUID ASSETS | $ 14,100.00 | MBGA/JC PENNEY | | $ Payt./Mos. | $ |
| Real estate owned | $ | | | 19.00 | 399.00 |
| Vested interest in retirement fund | $ 12,000.00 | Acct. no. 1986714564 | | 21 | |
| Net worth of business(es) owned | $ | CAPITAL ONE FSB | | $ Payt./Mos. | $ |
| Automobiles owned | $ | | | 15.00 | 125.00 |
| | | Acct. no. 5570091805872239 | | 8 | |
| | | METROPOLITAN CREDIT UN | | $ Payt./Mos. | $ |
| | | | | 80.00 | 2,685.00 |
| Other Assets | $ | Acct. no. 4626850110002445 | | 34 | |
| Personal Property | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | | |
| | | TOTAL MONTHLY PAYMENTS | $ 1,391.00 | | |
| TOTAL ASSETS a. | $ 26,100.00 | NET WORTH (a minus b) | $ -13,082.00 | TOTAL LIABILITIES b. | $ 39,182.00 |

CM21 (090600) 03

Freddie Mac Form 65 10/92
Fannie Mae Form 1003 10/92

6/15/2001 4:54 PM

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 305,000.00 |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | |
| e. | Estimated prepaid items | 2,126.83 |
| f. | Estimated closing costs | 6,851.80 |
| g. | PMI, MIP, Funding Fee | 4,471.50 |
| h. | Discount (if Borrower will pay) | |
| i. | Total costs (add items a through h) | 318,450.13 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | 2,042.85 |
| l. | Other Credits (explain) | |
| | Employer Paid Fees | |
| | Lender Credit | |
| | Lender Contribution | |
| | Seller Credit | |
| | Other Credits | 350.00 |
| | Homequity Credit Line | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee Financed) | 298,100.00 |
| n. | PMI, MIP, Funding Fee financed | 4,471.00 |
| o. | Loan amount (add m & n) | 302,571.00 |
| p. | Cash from/ to Borrower (subtract j, k, l & o from i) | 13,486.28 |

## VIII. DECLARATIONS

| | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. | Are there any outstanding judgments against you? | | X | | X |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. | Are you a party to a lawsuit? | | X | | X |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | X |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. | Is any part of the down payment borrowed? | | X | | X |
| i. | Are you a co-maker or endorser on a note? | | X | | X |
| j. | Are you a U.S. citizen? | X | | X | |
| k. | Are you a permanent resident alien? | | X | | X |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. | Have you had an ownership interest in a property in the last three years? | | X | | X |
| | (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| | (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property; (10) consumer credit reports will be obtained in connection with this application and we will inform you of the names and addresses of the agency(ies) supplying the report(s).

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [X] I do not wish to furnish this information | CO-BORROWER | [X] I do not wish to furnish this information |
|---|---|---|---|
| Race/National Origin: | [ ] American Indian or Alaskan Native  [ ] Asian or Pacific Islander  [ ] White, not of Hispanic origin  [ ] Black, not of Hispanic origin  [ ] Hispanic  [ ] Other (specify) | Race/National Origin: | [ ] American Indian or Alaskan Native  [ ] Asian or Pacific Islander  [ ] White, not of Hispanic origin  [ ] Black, not of Hispanic origin  [ ] Hispanic  [ ] Other (specify) |
| Sex: | [ ] Female  [ ] Male | Sex: | [ ] Female  [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Richard Luongo | Cendant Mortgage Corporation |
| [ ] face-to-face interview | | 3000 Leadenhall Road Mount Laurel, NJ 08054 |
| [ ] by mail | Interviewer's Signature — Date: 06/14/2001 | |
| [X] by telephone | Richard Luongo | |
| | Interviewer's Phone Number (incl. area code) | |
| | (800) 236-3268 | |



Cendant Mortgage
3000 Leadenhall Road
Mt.Laurel, NJ 08054

**CENDANT**
*Mortgage*

June 12, 2001

ANTHONY P MENDES

171 BRIDGE ST
DEDHAM,MA 02026

Sales Price: $310,000.00

Loan Amount: $307,545.00

Interest Rate: 7.125%

Type / Term of Loan:
FHA, 360 months

# YOU'RE APPROVED!

Dear ANTHONY P MENDES, DORIS MENDES,

We're pleased to tell you that you've been approved for a mortgage loan in the amount of $307,545.00. From here on, getting the home you want will be as easy as 1-2-3. We'll be with you all the way, from the application process right through closing.

Now that your application is already completed and on file with us, all you need to do is find your dream home. As soon as you do, simply call us at 1-800-236-3268, Ext. 84853, to give us the property address, and we'll make sure your loan closes right on time – guaranteed. You can use it to call us 7 days a week with any questions about your mortgage process.

*As part of the Cendant Mortgage Family, you now have these unique advantages:*

- HOUSE-HUNTING WITH CONFIDENCE. Knowing that your mortgage loan is already approved, you can look for your new home – confident that the closing process will be smooth and easy.

- SERVICE EXCELLENCE. Our service is so outstanding that 95% of our customers would recommend us to their family and friends. We will answer all of your mortgage questions promptly and thoroughly.

- ◆   NEGOTIATING POWER. With your financing secured and a closing date
      guaranteed, sellers know that your offer is solid.

- ◆   GUARANTEED SERVICE. We guarantee that we'll meet your closing date, or
      we'll give you 1/8th of one percent off your interest rate for the life of your
      loan.*

- ◆   FLEXIBILITY. Although you've been approved for a specific loan amount, we
      realize that your loan requirements may change. Simply call us if you need to
      change your loan amount, or the term or type of loan.

*While you continue to search for your new home, here are some important reminders:*

- ◆   Your interest rate is floating; however, you may call us at any time to discuss
      our available Rate Protection options. Based on your rate now, the maximum
      total monthly payment you qualify for is $2,503.32. This would be principal
      and interest of $2,071.99 and estimated taxes and insurance of $431.33
      (includes private mortgage insurance, if applicable).

- ◆   Remember to call us at 1-800-236-3268, Ext. 84853, with the property address
      as soon as you have selected a home. Once we arrange and receive a
      satisfactory appraisal on the home you intend to buy, and we verify your income
      and assets, you will be ready to go to closing.

We're here to make your home buying experience a fast, simple, and pleasant one. We look
forward to helping you purchase your dream home, and we welcome your questions, now, or
any time.

Sincerely,

Richard Luongo
Mortgage Consultant
1-800-236-3268, Ext. 84853

*P.S. Good luck househunting! As soon as you call us at 1-800-236-3268, Ext. 84853, with
the property address, it'll take only a few minutes to get you moving toward a fast and easy
mortgage closing.*

*Conventional purchase loans only. Customers must use a Cendant Mortgage - approved closing agent.



**STANDARD FORM**
**PURCHASE AND SALE AGREEMENT**

**From the Office of:**
GERRY ABBOTT INC., RLTRS.
43 North Main Street
Mansfield, MA   02048
508-339-6336/261-1218-fax

This ___6th___ day of ___July___ 2001

**1.  PARTIES AND MAILING ADDRESSES**

*(fill in)*

One Chilson Avenue Realty Trust, Helen Jackson, Trustee of 1-3 Chilson Avenue, Mansfield, MA   02048

hereinafter called the SELLER, agrees to SELL and

Doris H. and Anthony P. Mendes of
171 Bridge Street, Dedham, MA   02048

hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: Land and buildings known and numbered

**2.  DESCRIPTION**

*(fill in and include title reference)*

as 1-3 Chilson Avenue, Mansfield, MA   02048, situated on approximately 9416 square feet of land, and as more accurately described in Book 5166, Page 161, of the North Bristol County Registry of Deeds.

**3.  BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**

*(fill in or delete)*

Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and

but excluding chandelier in Unit #1 - Helen's House

**4.  TITLE DEED**

*(fill in)*

*Include here by specific reference any restrictions, easements, rights in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.*

Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven 7 calendar days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except

(a)  Provisions of existing building and zoning laws;
(b)  Existing rights and obligations in party walls which are not the subject of written agreement;
(c)  Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
(d)  Any liens for municipal betterments assessed after the date of this agreement;
(e)  Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises;  *
*(f)         substantially       residential

* or prevent the mortgagability thereof.

**5.  PLANS**

If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

**6.  REGISTERED TITLE**

In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

**7.  PURCHASE PRICE**

*(fill in), space is allowed to write out the amounts if desired*

The agreed purchase price for said premises is  ($ 305,000.00)

Three Hundred Five Thousand ------------------- dollars, of which

| $ | 1,000.00 | have been paid as a deposit this day and |
| $ | 8,000.00 | at signing of Purchase & Sale Agreement |
| $ | 296,000.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s). |
| $ | | |
| $ | 305,000.00 | TOTAL |

COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991
GREATER BOSTON REAL ESTATE BOARD
Rev. 1999            Form No. RA151



All rights reserved. This form may not be copied or reproduced in whole or in part in any manner whatsoever without the prior express written consent of the Greater Boston Real Estate Board.            CWV 5.0

**8**  **TIME FOR PERFORMANCE, DELIVERY OF DEED** *(fill in)*

Such deed is to be delivered at   **1:00**   o'clock   **P. M.** on the   **31st**   day of **August**   **2001** , at the   **North Bristol County** Registry of Deeds, unless otherwise agreed upon in writing.  It is agreed that time is of the essence of this agreement. **or at the office of the Counsel for Lending Institution.**

**9**  **POSSESSION AND CONDITION OF PREMISE.** *(attach a list of exceptions, if any)*

Full possession of said premises **free of all** tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof.  The BUYER shall be entitled to personally enter said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause **\*\*\* \*substantially     \*\* when inspected by Buyer's home inspector**

**10.**  **EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM** *(Change period of time if desired).*

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then ~~any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto,~~ unless the SELLER **shall   use reasonable** efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty   **30 calendar**   days.

**and above shall be at the Buyer's option or unless the Buyer's mortgage commitment expires.**

**11.**  **FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.**

If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

**12.**  **BUYER's ELECTION TO ACCEPT TITLE**

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either

(a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or

(b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

**\*\*\*\* without recourse**

**13.**  **ACCEPTANCE OF DEED**

The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

**14.**  **USE OF MONEY TO CLEAR TITLE**

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed.

**15.**  **INSURANCE** *\*Insert amount (list additional types of insurance and amounts as agreed)*

Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

| Type of Insurance | Amount of Coverage |
|---|---|
| (a) Fire and Extended Coverage | **\*$ Sufficient to Cover This Agreement** |
| (b) | |

**16.**  **ADJUSTMENTS** *(list operating expenses, if any, or attach schedule)*

Collected rents, mortgage interest, water and sewer use charges, operating expenses (if any) according to the schedule attached hereto or set forth below, and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed.  Uncollected rents for the current rental period shall be apportioned if and when collected by either party.

**\*\*\*within 48 hours prior to close.**

Copyright © 1979, 1984, 1986, 1987, 1988, 1991 Greater Boston Real Estate Board.  All rights reserved.

**17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES**

If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

**18. BROKER's FEE**
*(fill in fee with dollar amount or percentage; also name of Brokerage firm(s))*

A Broker's fee for professional services of  2.5% of the Purchase Price is due from the SELLER to Jack Conway Realtors of 311 Washington St. Westwood, MA  02090, only if and when the Title passes and the Deed is recorded.

~~the Broker(s) herein, but if the SELLER pursuant to the terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser.~~

**19. BROKER(S) WARRANTY**
*(fill in name)*

The Broker(s) named herein Gerry Abbott Inc., Realtors & Jack Conway warrant(s) that the Broker(s) is(are) duly licensed as such by the Commonwealth of Massachusetts.
Realtors

**20. DEPOSIT**
*(fill in name)*

All deposits made hereunder shall be held in escrow by Gerry Abbott Inc., Realtors as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent may retain all deposits made under this agreement pending instructions mutually given in writing by the SELLER and the BUYER.
Deposit shall be hkept in an interest bearing account in a federally insured bank with the interest split equally between the Buyer and Seller at closing.

**21. BUYER's DEFAULT; DAMAGES**

If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages ~~unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing~~
and this shall be the Seller's Sole and Exclusive Remedy at Law and in Equity.

**22. RELEASE BY HUSBAND OR WIFE**

The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises.

**23. BROKER AS PARTY**

The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.

**24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc.**

If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

**25. WARRANTIES AND REPRESENTA- TIONS**
*(fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made*

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): The Buyer has had the option of having a home inspection prior to the signing of the Purchase & Sale Agreement and the Buyer accepts the premises in their present condition without representation or warranty by the Seller or their Broker as to the condition thereof.

**26. MORTGAGE CONTINGENCY CLAUSE**
*(omit if not provided for in Offer to Purchase)*

In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional *FHA
bank or other institutional mortgage loan of $     297,000.00          at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before       July 31      , 2001  the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before _____ July 13 _____, 2001

Copyright © 1979, 1984, 1986, 1987, 1988, 1991 Greater Boston Real Estate Board. All rights reserved.                Page 3

27  CONSTRUCTION OF AGREEMENT
This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28.  LEAD PAINT LAW
The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29.  SMOKE DETECTORS
The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law.

30.  ADDITIONAL PROVISIONS
The initialed riders, if any, attached hereto, are incorporated herein by reference.
- Home is connected to public sewer system in Mansfield.
- Home to be free and clear of all tenants prior to closing.
- See Attached Rider

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED
LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE. This is a legal document that creates binding obligations. If not understood, consult an attorney.

SELLER (or spouse) 1 Chilson Ave Rlty Trst
Helen Jackson, Trustee
Taxpayer ID/Social Security No. _____

SELLER _____
Taxpayer ID/Social Security No. _____

BUYER  Doris H. Mendes
Taxpayer ID/Social Security No. _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_

BUYER  Anthony P. Mendes
Taxpayer ID/Social Security No. _034 44 0265_

Broker(s)

Copyright © 1979, 1984, 1986, 1987, 1988, 1991 Greater Boston Real Estate Board. All rights reserved.

RIDER to the Purchase and Sale Agreement dated July      , 2001 by and between One Chilson Avenue Realty Trust, Seller, and Doris H. and Anthony P. Mendes, Buyers

RE:  1-3 Chilson Avenue, Mansfield, MA 02048
     Property Address

1    The Seller hereby agrees that the Buyer or the Buyers' representative shall have the right of access to the premises with reasonable notice, to inspect, to take measurements and to show to contractors, architects, insurers, banks and other lenders, at reasonable times, form the date of this Agreement, up to and including the date for the delivery of the deed

2    Seller hereby states that on the day of the closing the premises shall be in broom-clean condition and free from all personal property and debris

3.   The Seller acknowledges and understands that in order for a financial institution to process the Buyers' mortgage application it will require access to the subject premises. The Seller expressly agrees to cooperate to the fullest extent with the financial institution in providing said access. The Seller further understands that at the closing the financial institution will require the Seller to execute certain documents.  These documents include but are not limited to the following:  federal loan disclosure and adjustment sheets; affidavit relative to purchase price; affidavits relative to the existence of lead paint and urea formaldehyde in the premises; affidavits relative to materialmen's liens, sufficient in form and substance to enable the title insurance company to delete its standard ALTA exception for such lien; affidavit that there are no parties in possession of or entitled to possession of the premises except for those currently in possession.  The Seller agrees to sign all such required documents containing true information.  The Seller further agrees that the inability of the Buyer to perform pursuant to the terms of this Agreement insofar as it is a result of the Sellers' failure to sign said documents or cooperate with the financial institution, shall not be a breach of this Agreement by the Buyer and shall give rise to the Buyers' option to extend this Agreement for a period of seven (7) days or to terminate this Agreement and receive back all deposits, with interest, paid hereunder

4.   Any matter or practice arising under or relating to this Agreement which is the subject of a practice standard or title standard of the Massachusetts Conveyancers Association shall be governed by such standard to the extent applicable

5.   All notices required or permitted to be given hereunder shall be in writing and delivered by hand or mailed postage prepaid, by registered or certified mail, addressed in the case of the Seller to:
     Helen Jackson, Trustee
     One Chilson Avenue Realty Trust
     1,3 Chilson Avenue
     Mansfield, MA 02048
     with a copy to:

Page - 1

and in the case of the Buyer to:
Dons H. and Anthony P. Mendes
171 Bridge Street
Dedham, MA 02048
with a copy to:
Lyn E. Erickson, Esq.
101 Tremont St., Suite 412
Boston, MA 02108
Hand delivery shall be in hand only  Mailed notice shall be deemed given upon postage cancellation date by the U.S. Post Office.

6.    The Seller hereby represents, warrants and covenants to Buyer as follows:

    (a)    That the premises are not the subject of any outstanding agreements with any party pursuant to which any such party may acquire any interest in the premises;

    (b)    The Seller is presently not a party to any lawsuit in reference to the premises, nor is the Seller aware of any threatened or contemplated lawsuits against the Seller in reference to the premises; and,

    (c)    The Seller is not obligated to offer any other person any right of first refusals to buy the within described premises.

7.    Seller shall also deliver an insurable title to the premises sufficient to allow the Buyer to obtain an ALTA Owner's Policy with the standard exceptions and subject to specific encumbrances from a company licensed to do business in Massachusetts

8.    The Seller hereby represents and covenants that no notice or communication has been received by Seller from any public authority that there exists with respect to the premises any condition which violates any municipal, state or federal law, rule or regulation which has not heretofore been rectified.

9.    No closing funds are to be released from the closing except in escrow until the deed and mortgage have been recorded at the appropriate registry of deeds  This paragraph is intended to modify Paragraph 7 of the printed Agreement.

10.    Not withstanding the provisions of Paragraph 8 of the printed Agreement to the contrary, in the event the attorney for the Buyers lender is unable to close the Buyer's loan transaction at the time for the performance hereof, the Seller agrees that the time for the performance may be extended to a time and date designed by the Buyer, as directed by the lender's attorney, but in no event later than the fifth (5) business day after the time for performance and such attorney may change the place for delivery to his or her office. Buyer shall give the parties reasonable notice of any such change(s). Time shall be of the essence for this new date if this clause is exercised.

Page - 2

11. Reasonable efforts as required by any extension under Paragraph 10 of the printed Agreement shall require the Seller to expend no more than five percent (5%) of the selling price in costs, expenses and fees in order to attempt to make the premises conform therewith.

12. To Paragraph 10 of the printed Agreement is added the following language .   so long as Buyer can obtain corresponding extensions to his or her financing commitment without incurring any material additional bank charges or fees and or a materially higher interest rate. Material or materially shall mean that the Buyer shall spend no more than an additional $1,500.00 over the life of the loan in bank fees, costs or interest.

13. Notwithstanding the provisions of Paragraph 12 or any other provision of this Agreement, if prior to the delivery of the deed, the building comprising the premises or any portion of the same are damaged by fire or other casualty so that the same cannot reasonably be restored for the intended use by the time of the delivery of the deed, then at Buyer's option, any payments made under this Agreement shall be forthwith refunded and all of the obligations of the parties hereto shall cease and this Agreement shall be null and void and without recourse.

14. If the sales price is over Three Hundred Thousand and xx/100 Dollars ($300,000.00) and the Seller (transferor) is a foreign person, the Seller agrees to execute the forms required by Section 1445 of the Internal Revenue Code.

15. The Seller hereby states that to the best of their knowledge, there is no Urea Formaldehyde Foam Insulation (UFFI) present in the premises.

Signed this   $6\ th.$   day of July, 2001.

Helen E. Jackson.
**Helen Jackson, Trustee,**
One Chilson Avenue Realty Trust, Seller

Doris H. Mendes
Doris H. Mendes, Buyer

Anthony P Mendes
Anthony P Mendes, Buyer

**Page - 3**

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts<br>SUPERIOR COURT DEPARTMENT<br>County: Bristol | Docket Number<br>B05-809 |
|---|---|---|

| PLAINTIFF(S)    Anthony and Doris Mendes | DEFENDANT(S)    Cendant Mortgage |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Law Office of Christopher J. Trombetta<br>Christopher J. Trombetta, 310 N. Main<br>Board of Bar Overseers number: St., Mansfield MA | ATTORNEY (if known)<br><br>02048 |
|---|---|

Place an x in one box only:    Origin code and track designation

[ X ] 1. F01 Original Complaint
[  ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial)    (F)
[  ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[  ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[  ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60)    (X)
[  ] 6. E10 Summary Process Appeal    (X)

| CODE NO. | TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)<br>TYPE OF ACTION (specify)    TRACK    IS THIS A JURY CASE? | | |
|---|---|---|---|
| A01 | Services | ( F ) | ( X ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
### (Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses .................................................. $...............
2.  Total Doctor expenses .................................................. $...............
3.  Total chiropractic expenses ............................................. $...............
4.  Total physical therapy expenses ....................................... $...............
5.  Total other expenses (describe) ....................................... $...............
        Subtotal    $...............
B.  Documented lost wages and compensation to date ......................... $...............
C.  Documented property damages to date ................................... $...............
D.  Reasonably anticipated future medical and hospital expenses ............ $...............
E.  Reasonably anticipated lost wages ..................................... $...............
F.  Other documented items of damages (describe)
        $...............
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

        $...............
        TOTAL: $...............

## CONTRACT CLAIMS
### (Attach additional sheets as necessary)

Provide a detailed description of claim(s):    Breach of Contract to
                                                Provide Financing            More
                                                        TOTAL    $.than.....
                                                                $200,000

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT
                    N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____    DATE: 7-25-05

A.O.S.C. 2003

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

ANTHONY MENDES
AND DORIS MENDES,

Civil Action No. 5-809-B

         Plaintiffs,

v.

CENDANT MORTGAGE,

         Defendant.

BRISTOL, SS SUPERIOR COURT
FILED

AUG 2 9 2005

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

## NOTICE OF FILING OF NOTICE OF REMOVAL

TO: Civil Clerk of Court
Bristol Superior Court
9 Court Street, Room 13
Taunton, MA 02780

Notice is hereby given, pursuant to 28 U.S.C. § 1446(d), that the defendant,

Cendant Mortgage, has removed the above-captioned matter to the United States District Court

for the District of Massachusetts. A certified copy of the Notice of Removal filed with the

United States District Court is enclosed herewith.

Respectfully submitted,

CENDANT MORTGAGE,
By Its Attorneys,

Thomas I. Elkind, BBO# 153080
Andrew K. Goldstein, BBO #552239
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts 02199
(617) 342-4000

Dated: August 26, 2005

## CERTIFICATE OF SERVICE

I, Thomas I. Elkind, hereby certify that on this 26th day of August, 2005, I caused the foregoing Defendant's Notice of Filing Notice of Removal to be served by first class mail, postage paid, upon the plaintiff's attorney:

Christopher J. Trombetta
Law Office of Christopher J. Trombetta
310 North Main Street
Mansfield, MA 02048

Thomas I. Elkind, Esq.

A True Copy By Photostatic Process
Attest

Asst. Clerk of Courts