UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY MENDES<br>And DORIS MENDES,<br><br>                    Plaintiffs,<br><br>     v.<br><br>CENDANT MORTGAGE,<br><br>                    Defendant. | )<br>)<br>)  Civil Action No. 05CV11765DPW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant, PHH Mortgage Corporation f/k/a Cendant Mortgage, in support of its Motion For Summary Judgment, hereby submits this statement of material facts to which there is no genuine issue to be tried.

1.      In 2001, Mendes began searching for a home to purchase in Mansfield, Massachusetts.  See Deposition of Anthony Mendes ("A. Mendes Dep."), p. 23.

2.      At all relevant times, Mendes was represented by counsel in connection with their search for property to purchase.  See A. Mendes Dep., pp. 54-55.

3.      In connection with this search, Anthony Mendes was referred to Richard Luongo of Cendant concerning mortgage financing.  Id. at 45-46.  In the spring of 2001, Luongo sent Anthony Mendes a series of Pre-Qualification letters for a loan, dated March 21, 2001, May 3, 2001, and June 12, 2001.  Id. at pp. 92-105, Ex. 3-5.  All of these letters had conditions attached to them.  Id. at pp. 92-105, Ex. 3-5; see also Deposition of Richard Luongo ("Luongo Dep."), pp. 38-41.

4.      On June 12, 2001, Mendes saw the property located at 1-3 Chilson Avenue, Mansfield, Massachusetts (the "Property") for the first time.  See Anthony Mendes Dep., p. 31.

The Property is a 3 family dwelling, with a three bedroom unit, a two bedroom unit, and a one bedroom unit. Id. at p. 38. Mendes intended to live at the Property with the younger of their two sons. Id. at pp. 39-40.

5.  On June 12, 2001, Mendes made an offer to purchase the Property for $305,000, which the owner accepted. See Anthony Mendes Dep., p. 31, Ex. 2. Mendes made a deposit of $1,000 with the offer, which Mendes paid with a check drawn on Doris Mendes' account at Citizens Bank. See Anthony Mendes Dep., p. 31, Ex. 2; see also, Deposition of Doris Mendes ("D. Mendes Dep."), p. 44, Ex. 1.

6.  On June 14, 2001, Mendes submitted a Residential Loan Application to Cendant for the purchase of the Property. See Complaint, Ex. A. By the application, Mendes applied to Cendant for a Federal Housing Administration ("FHA") loan. Id. Anthony Mendes made the application with Mr. Luongo by telephone. See A. Mendes Dep., p. 68; Luongo Dep., pp. 43-49.

7.  In the Application, Mendes represented to Cendant that they had $14,100 in the bank. Id., Ex. A at p. 3. By the Application, Mendes also represented to Cendant that Anthony Mendes' base employment income was $3,500 per month; and that the Mendes' total income was over $9,000 per month, including $1,575 of anticipated rental income from the Property. Id.

8.  Mendes submitted documentation to Cendant in support of the Application. See Affidavit of Clair Taylor ("Taylor Aff."), ¶¶ 6-7, Ex. B-C. This documentation included the following:

- Bank statements from Fleet Bank, Citizens Bank, and Metropolitan Credit Union that showed a total account balance of $6,976.49, as opposed to the $14,100 that the Mendes represented they had in the Application.

- Income and employment documentation for Anthony Mendes that showed the following earnings history:

    1999:  Total earnings of $34,454.33, or $2,871.19 per month;

2

    2000:   Total earnings of $35,609.24, or $2,967.44

    2001:   Base pay in 2001 at the rate of $34,320 per year, or $2,860 per month, *i.e.,* well under the $3,500 per month that Mendes represented in the Application.

9. On July 6, 2001, Mendes entered into a purchase and sale agreement with the owner of the Property (the "P&S"). Defendants' Second Set of Requests For Admissions To Plaintiff Anthony Mendes and Doris Mendes, number 20; Exhibit C, Response of Anthony Mendes and Doris Mendes to Second Set of Requests for Admissions, number 20. Mendes made an additional deposit of $8,000 with the P&S, for a total deposit of $9,000.

10. Pursuant to paragraph 8 of the P&S, a closing was scheduled for August 31, 2001. See Response to Requests for Admissions, Ex. C. Paragraph 26 of the P&S was a Mortgage Contingency Clause, which conditioned Mendes' purchase of the Property on their obtaining a mortgage loan commitment of $297,000 on or before July 31, 2001. Id.

11. Pursuant to a July 11, 2006, appraisal of the Property done on behalf of Cendant by John G. Pacheco of High Point Real Property Appraisers, Inc. (the "Appraiser"), the fair market rental value of the Property's three units, including the unit that Mendes proposed to occupy, was $2,075. See Taylor Aff., ¶ 8, Ex. C.

12. In order to qualify for an FHA loan, the Mendes were required to meet the following debt to income ratios:

- The Mendes' total monthly mortgage payment could not exceed 29 percent of the Mendes' gross effective income (the "Mortgage Payment Expense Ratio").

- The Mendes' total of their monthly mortgage payment and all recurring charges could not exceed 41 percent of the Mendes' gross effective income (the "Total Fixed Payment Ratio").

See Taylor Aff., ¶ 8, Ex. A, Chapter 2, Section 5.

BOST_199036.1

13. Pursuant to an underwriting analysis that Cendant Mortgage performed on August 1, 2001, Mendes' Mortgage Payment Expense Ratio was 36.84% and their Total Fixed Payment Ratio was 52.74%, well above acceptable ratios. See Taylor Aff., ¶ 10, Ex. F.

14. On August 10, 2001, Cendant sent to Mendes a Final Commitment letter for the Property. See A. Mendes Dep. p. 120, Ex. 7. The first sentence of the Final Commitment provided that:

> Cendant Mortgage Corporation is pleased to issue a mortgage loan commitment to you which reflects the final terms of your loan.

15. Paragraph "A" of the Final Commitment entitled, "Conditions to commitment," provided that the terms of the loan included:

- Base Loan Amount:  $297,765
- MIP/funding fee . . . :  $4,466.48
- Total loan amount:  $302,231.00
- Approved Interest Rate:  7.250
- Loan Type:  FHA

Id.

16. MIP refers to a mortgage insurance premium required for FHA loans. See Taylor Aff., ¶ 11.

17. Paragraph "C" of the Final Commitment, entitled, "Conditions to commitment," provided:

> Please read the conditions listed below carefully. They are a part of this commitment and are needed to meet your August 31st, 2001 closing date.

See A. Mendes Dep. p. 120, Ex. 7.

BOST_199036.1

18.   Among the conditions listed in paragraph C of the Final Commitment are the following:

- Customer to provide bank statement to show where that $9,000 deposit on sales Contract came from and an escrow letter from attorney.

- Appraiser to provide the net market rental for all 3 units for the area to evidence that PITI doesn't exceed 75% of the market rental (also to obtain additional income to lower ratios)

See A. Mendes Dep. p. 120, Ex. 7.

19.   The reference to "escrow letter from attorney" in the Final Commitment referred to a requirement of an FHA loan for a multi-family home that the borrow have three months reserves, or in this case, $6,225 in liquid assets. See Taylor Aff., ¶ 13, Ex. A, Chapter 1, Section 2, paragraph 1-8(C)(3).

20.   The condition concerning the net market rental value of the Property was based on FHA guidelines for three family homes that provides:

> Regardless of occupancy status, the property must be self-sufficient (i.e., the maximum mortgage is limited so that the ratio of the monthly mortgage payment, divided by the monthly net rental income, does not exceed 100 percent).

See Taylor Aff., ¶ 3, Ex. A, Chapter 1, Section 2, paragraph 1-8(C).

21.   "PITI" referred to in the Final Commitment is the amount that the Mendes would have to pay monthly toward Principal, Interest, Taxes, and Insurance in connection with their proposed purchase of the Property. See Taylor Aff., ¶ 15. The PITI on Mendes' proposed loan from Cendant was $2,490.34. See Taylor Aff., ¶ 15, Ex. G.

22.   The last paragraph of the Final Commitment, entitled "Acceptance of Offer," and located directly above where Mendes signed the Final Commitment, provided:

> The terms and conditions offered by this Final Commitment letter and Attachments are accepted by the undersigned. I/we have received a duplicate original of this document.

5

See A. Mendes Dep. p. 120, Ex. 7.

23. Mendes accepted the Final Commitment on August 14, 2001. Id.

24. On August 22, 2001, the Appraiser submitted an addendum to his appraisal that reflected an increase in the monthly fair market rental value of the Property from $2,075 to $2,325. See Taylor Aff., ¶ 9, Ex. E.

25. Since the PITI on the Mendes' proposed loan from Cendant was $2,490.34, notwithstanding this addendum, PITI exceeded 75% of the Property's monthly fair market rental value. Taylor Aff., ¶¶ 9, 15.

26. On August 29, 2001, Mendes and the Property's seller agreed to extend the closing date on a sale of the Property to September 13, 2001. See A. Mendes Dep., pp. 138, 139, Ex. 10.

27. After August 22, 2001 and even beyond the re-scheduled closing date, Cendant attempted to have the Appraiser increase his estimate of the fair market rental value of the Property. See Taylor Aff., ¶ 18, Exs. H and I. The Appraiser, however, would not raise his opinion of the fair market rental value of the Property. Id. at 16.

28. Mendes never provided to Cendant an appraisal that evidenced that PITI didn't exceed 75% of the net market rental value for all 3 units of the Property. See Taylor Aff., ¶ 16.

29. Mendes never provided to Cendant any bank statements showing the source of the $9,000 deposit. Taylor Aff., ¶ 7.

30. Mendes never provided to Cendant an escrow letter from his attorney that he had three months reserves, as required by FHA Guidelines, in order to close on their purchase of the Property. Id. at ¶ 14.

31. Notably, as of August 2001, Mendes had only $2,768.16 in cash.  See D. Mendes Dep., Exs. 5-7.

32. Cendant informed Mendes that they would not be able to close on Mendes' proposed loan because the Property did not meet FHA Guidelines.  See A. Mendes Dep., p. 206, Ex. 28.

33. Even though Mendes' mortgage contingency deadline had expired on July 31, 2001, the seller of the Property returned the Mendes' $9,000 deposit to them.  See A. Mendes Dep., p. 174, Ex. 13.

34. In addition, Cendant refunded to Mendes a $350 application fee that Mendes had paid in June 2001.  See Taylor Aff., ¶ 17.

35. On November 16, 2001, Mendes purchased a three bedroom home located at 895 School Street, in Mansfield, Massachusetts for $269,900.  See A. Mendes Dep., pp. 26-27.

    PHH MORTGAGE CORPORATION,
    f/k/a Cendant Mortgage,

    By its attorneys,


    /s/Andrew Keith Goldstein
    Thomas I. Elkind, BBO Number 153080
    Andrew Keith Goldstein, BBO Number 552239
    Foley & Lardner LLP
    111 Huntington Avenue
    Boston, Massachusetts  02199
    (617) 342-4000
    agoldstein@foley.com
    telkind@foley.colm

Dated:  September 22, 2006

BOST_199036.1

## **CERTIFICATE OF SERVICE**

      I, Andrew Keith Goldstein, hereby certify that on September 22, 2006, I caused the foregoing document to be served by first class mail, postage prepaid upon the Plaintiffs' attorney, Christopher J. Trombetta, Law Office of Christopher J. Trombetta, 310 North Main Street, Mansfield, MA 02048.

                                                /s/ Andrew Keith Goldstein
                                                Andrew Keith Goldstein