UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                                           *

ANTHONY MENDES                                                    *
AND DORIS MENDES,                                                *
                                                                                          *
                        Plaintiffs,                *      C. A. No.: 05-11765-DPW
                                                                                       *
v.                                                                                        *
                                                                                          *
CENDANT MORTGAGE,                                          *
                                                                                          *
                        Defendant.              *
_____

PLAINTIFFS' OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

      Plaintiffs, Anthony and Doris Mendes, hereby submit their opposition to the Summary Judgment Motion of PHH Mortgage Corporation f/k/a Cendant Mortgage ("Cendant"). Briefly stated the motion should be denied because: (1) Cendant breached a contract formed by Mr. and Mrs. Mendes' reliance on Cendant's June 12, 2001 letter in which it agreed to provide them with a mortgage loan; (2) Cendant failed to advise Mr. and Mrs. Mendes of other loans for which they could have qualified; and (3) Cendant violated Mass. Gen. Laws Ch. 93A by engaging in unfair activity based on its distribution to Mr. and Mrs. Mendes of information which a reasonable lender would have known to be misleading.

<u>INTRODUCTION</u>

      To capture the business of Mr. and Mrs. Mendes, Cendant issued a letter indicating that they had been approved for guaranteed mortgage financing. Mr. and Mrs. Mendes relied on the letter and did not seek alternative financing. Such reliance created a contract. Two months later, Cendant refused to make the loan just days before closing.

Accordingly, Cendant breached the contract. As a result, Mr. and Mrs. Mendes lost the opportunity to purchase an income producing property.

Cendant also mishandled the loan process from the date it began. It failed to communicate alleged rental income and savings requirements until just several days before the closing. Cendant failed to apply all amounts earned by Mr. and Mrs. Mendes in determining if they qualified for a loan. Cendant also failed to advise Mr. and Mrs. Mendes of other available loans when it concluded that it would not fund an FHA loan to them.

UNDISPUTED FACTS

Mr. and Mrs. Mendes were unsophisticated buyers in 2001. Mr. Mendes worked as a cook at a nursing home. Deposition of Anthony Mendes ("A. Mendes Dep."), pp. 10-13.[1] Mrs. Mendes worked as an aide at a nursing home and possessed a second job where she worked from 11:00 p.m. until 6:30 a.m. as a medical records clerk. Deposition of Doris Mendes ("D. Mendes Dep."), pp. 11-12.[2] She is from Peru and speaks broken English. D. Mendes Dep., pp. 5-6, 9, 13. In 2001, they were seeking to purchase their very first home. A. Mendes Dep., p. 22-23, 116.

In the spring of 2001, Anthony and Doris Mendes viewed multi-family properties listed for sale. A. Mendes Dep., pp. 22-23. As to three of such properties, Cendant provided letters to Mr. and Mrs. Mendes in March, May and June 2001. In the letters, Cendant agreed to provide to Mr. and Mrs. Mendes a mortgage loan insured by the FHA. Cendant selected this loan and never explained it or any alternatives to Mr. and Mrs.

---

[1] Deposition pages of Mr. Mendes' deposition are attached as Exhibit A to Affidavit of Christopher J. Trombetta.
[2] Deposition pages of Mrs. Mendes' deposition are attached as Exhibit A to Affidavit of Christopher J. Trombetta

Mendes.  A. Mendes Dep., pp. 45, 52-53, 78-79, 195.  Mr. and Mrs. Mendes also did understand the meaning of FHA.  Id.

Cendant issued a June 12, 2001 letter applicable to the purchase by Mr. and Mrs. Mendes of the Mansfield, Massachusetts property, 1-3 Chilson Avenue.  The letter stated:

|                    |          |
|--------------------|----------|
| Sales Price:       | $310,00  |
| Loan Amount:       | $307,545 |
| Interest Rate:     | 7.125%   |
| Type/Term of Loan: | FHA, 360 Months |

YOU'RE APPROVED!

```
* * * * * * * * * *
*  FHA            *
*  APPROVAL       *
* * * * * * * * * *
```

A. Mendes Aff., ¶ 2, Ex. B.

The letter went on to state:

We're pleased to tell you that you've been approved for a mortgage loan in the amount of $307,545.00.  From here on, getting the home you want will be an easy as 1-2-3.  We'll be with you all the way, from the application process right through closing

Now that your application is already completed and on file with us, all you need to do is find your dream home.  As soon as you do, simply call us at 1-800-236-3268, Ext. 84853, to give us the property address, and we'll make sure your loan closes right on time – <u>guaranteed</u>.

Id., (emphasis added).

The letter also noted that Mr. and Mrs. Mendes could house hunt with confidence "[k]nowing that [their] mortgage [had been] approved" and be "confident that the closing process will be smooth and easy."  Id.  The letter also indicated that because "your

financing [is] secured and a closing date is guaranteed, sellers know that your offer is solid." Id. [3]

### Mr. and Mrs. Mendes Satisfied the Lender's Indication That an Appraisal Be Conducted and That Their Incomes Become Verified.

Cendant claims that Mr. and Mrs. Mendes did not satisfy what it claims are two requirements set forth in the June 12, 2002 letter. That letter stated that Cendant would need to obtain an appraisal as to the property, 1-3 Chilson Avenue, and verify the income and assets of Mr. and Mrs. Mendes. Each of these alleged requirements were satisfied.

### The Appraisal Related Only to the Property's Sale Price and Cendant Received an Adequate Appraisal.

Cendant attempts to mislead the court by contending that the requested appraisal needed to indicate that seventy-five percent of total rents would be greater than the monthly mortgage payment. The appraisal referred to in the letter, however, related only to support for the sales price. That conclusion is made clear in the conditions attached to the May 3, 2001 letter. Those conditions indicate that an appraisal "<u>supporting the sale price needed to be acquired</u>." Shortsleeve Expert Report, p. 1.[4] The relevant appraisal supported the price of 1-3 Chilson Avenue. A. Mendes Aff., ¶7, Ex. G.

More important is that rents played no role in calculating the value of 1-3 Chilson Avenue. The appraiser based its appraisal on comparisons to other properties. Indeed, if Mr. and Mrs. Mendes needed to meet requirements as to rent, that issue should have been set forth in the June 12, 2001 letter. Shortsleeve Expert Report, p. 2. Cendant's failure to

---

[3] Cendant contends that Mr. and Mrs. Mendes cannot rely on this letter because they do not possess all of its pages. Mr. and Mrs. Mendes produced all pages that it possessed. A Mendes Dep., p. 64. More important, however, is that Cendant does not even possess a copy of the letter.
[4] Mr. Shortsleeve's report is attached as Exhibit H to the Trombetta Affidavit.

4

mention in its June 21, 2001 letter any rent condition precluded it from asserting such a condition in August 2001.  Id.

Mr. and Mrs. Mendes Possessed Adequate Income<br>and Cendant Never Indicated that a Deficiency Existed.

Cendant's September 10, 2001 Government Underwriting Worksheet verifies that Mr. and Mrs. Mendes possessed sufficient income.  Trombetta Aff., ¶7, Ex. F.[5]  This income differs from the amounts set forth in the application because Cendant had received verification as to income amounts.  Cendant had the ability to obtain this information based on a release which Mr. and Mrs. Mendes executed income 2001.  A. Mendes Aff. ¶3, Ex. C.  Cendant also received documents which evidenced Mr. Mendes' income of $3,500 per month and Mrs. Mendes' income of nearly $3,900 per month as set forth in the application.  A. Mendes Aff., ¶6, Ex. F. (attaching several documents forwarded by Mr. and Mrs. Mendes to Cendant).[6]  Furthermore, tax returns filed by Mr. and Mrs. Mendes indicate that they earned more that the amounts appearing on the worksheet.  Id.  ¶13, Ex. H.

Cendant also incorrectly understated their income on the September 10, 2001 government underwriting worksheet.  Cendant included base and overtime income in calculating Mrs. Mendes' $3,087.84 earnings figure.[7]  Cendant, however, failed to include $748 in income earned from Mrs. Mendes' second job.  That amount appeared on

---

[5] This verification also is apparent based on the change in income figures previously indicated on a July 10, 2001 government underwriting worksheet.  Trombetta Aff., ¶6, Ex. E.

[6] Cendant also had received income and asset information from Mr. and Mrs. Mendes before issuing its prior letter in May.  A. Mendes Aff., ¶1, Ex. A.  That conclusion also is evidenced by the reference to earnings figures relating to Mr. and Mrs. Mendes in the May 3, 2001 letter.  Mendes Aff., ¶1, Ex. A.  Cendant obtained information from Mr. Mendes by telephone.  A. Mendes Dep., p. 48.  Cendant also had forwarded a list of conditions with the May 3, 2001 letter it had forwarded to Mr. and Mrs. Mendes.  A. Mendes Aff., ¶1, Ex. A.  Mr. and Mrs. Mendes satisfied each of these conditions.  Expert Report of Connor Shortsleeve. p. 2.

[7] This conclusion is apparent by adding the base income and overtime figures appearing in the application.  Trombetta Aff., ¶8, Ex. G.

the application but does not appear on the underwriting worksheet. Mrs. Mendes also provided to Cendant evidence that she earned such amounts. Mendes Aff., ¶ 6, Ex. F.

Moreover, the rental income set forth in the September 10, 2001 government underwriting worksheet also qualified Mr. and Mrs. Mendes for an FHA loan. Trombetta Aff., ¶9, Exhibit H. (Shortsleeve Expert Report, pp. 1-2). That conclusion would have been apparent to Cendant had it included Mrs. Mendes' income form her second job on the worksheet. Id.

### Cendant Never Notified Mr. and Mrs. Mendes as to Any Savings Deficiency and Mr. and Mrs. Mendes Possessed Adequate Savings in Any Event.

Cendant admits that it never advised Mr. and Mrs. Mendes that they lacked adequate savings. As noted above, Cendant had the ability to obtain all relevant information based on the release executed by Mr. and Mrs. Mendes. A. Mendes Aff., ¶3, Ex. C. Cendant also possessed information no later than June 14, 2001 which indicated that Chilson Avenue was a three unit property. That fact allegedly indicated that Mr. and Mrs. Mendes would need to possess $6,225 in reserves on the date of closing. Cendant, however, never advised Mr. and Mrs. Mendes of any such requirement. A. Mendes Dep., p. 216.

Had Cendant communicated such a requirement, Mr. and Mrs. Mendes easily could have funded that amount. Doris Mendes possessed a 401K from which she would have withdrawn $5,700 tax free. Because Mr. and Mrs. Mendes then lived with Mrs. Mendes' mother, they could have avoided expenses, such as rent and utilities, and saved more than $5,000. A. Mendes Aff., ¶11. Mr. and Mrs. Mendes also could have obtained a gift from Doris Mendes' mother to fund the down payment and any closing expenses

6

that may have arisen. D. Mendes Aff, ¶¶1-4. Mr. and Mrs. Mendes easily could have possessed more than $10,000 in liquid assets.

Cendant Never Indicated that Rents Must Exceed<br>
<u>Seventy-Five Percent of the Monthly Mortgage Payment.</u>

Cendant contends that Mr. and Mrs. Mendes did not qualify for an FHA loan because seventy-five percent of the rental amounts to be earned from 1-3 Chilson Avenue did not exceed the monthly mortgage payment. Cendant, however, failed to advise Mr. and Mrs. Mendes of this condition even though it knew when it completed the application that Chilson Avenue was a three unit property. Trombetta Aff., ¶8, Ex. G. Cendant also never forwarded the application to Mr. and Mrs. Mendes for review or signature. A. Mendes Aff., ¶10.

The application also indicated that the mortgage payment equals $2,467. The application also indicates that net rents as to two apartments amount only to $1,575. A $900 deficiency existed between the rental amount and mortgage amount. Accordingly, the gross rent from all apartments needed to exceed $3,289 to satisfy the alleged requirement that seventy-five percent of all net rents to be earned on all three units exceed the monthly mortgage amount. Thus, the third apartment need to receive rents in excess of $1,189. The application, however, contained no analysis as to whether seventy-five percent of gross rents would exceed the mortgage amount. The application also did not indicate that rent on the third apartment would need to exceed $1,189. Trombetta Aff., ¶8, Ex. G.

That failure is glaring for at least two reasons. First, the rental amounts listed in the application indicate that the property would not satisfy that requirement. Second, Cendant contends that it obtained projected rents from Anthony Mendes, a first time

7

buyer with no real estate experience.  A.  Mendes Dep. P. 80.  Accordingly, Cendant could not rely and should not have relied on any estimate provided by him.

Even more significant is that the Cendant representative, who completed the application, never advised Mr. and Mrs. Mendes in its June 12, 2001 or any prior letter that such a condition would exist as to their purchase of 1-3 Chilson Avenue.   A. Mendes Aff., ¶¶1-2, Exs. A & B.   This representative had received more than seven months of training as to qualifications for mortgage loans, including those guaranteed by the FHA. Deposition of Richard Luongo ("Luongo Dep."), pp. 9-12.[8]  In creating the application, this representative also used a computer program that applied all FHA requirements. Luongo Dep., pp. 103-04, 116-17.  Despite his training and the use of this program, no indication existed as to a requirement that net rents must exceed the mortgage amount.

Furthermore, this representative also indicated that Cendant did not need to follow the guidelines.  The lenders had the ability to deviate.  Id. pp. 63-64, 99-102.  See also Shortsleeve Expert Report, p. 2.  Accordingly, Cendant could have elected and apparently did elect not to apply this requirement in making its decision to make the loan.  Id.

Mr. and Mrs. Mendes Relied on the June 21, 2001 Letter to Their Detriment.

In reliance on Cendant's representation contained in the June 12, 20001 letter, Mr. and Mrs. Mendes did not pursue a loan from any other lender.  A. Mendes Aff., ¶8; A. Mendes Dep., p. 177.  At Cendant's direction, they went onto sign a purchase and sale agreement as to 1–3 Chilson Avenue based on their understanding that they would receive a mortgage loan from Cendant.  A. Mendes Dep., pp. 112-13, 134.  They funded

---

[8] Deposition pages of Mr. Luongo's deposition are attached as Exhibit C to Affidavit of Christopher J. Trombetta.

a $9,000 deposit as to the property. A. Mendes Dep., pp. 144-45. Mr. and Mrs. Mendes then simply waited more than two months to close. A. Mendes Dep., p. 177.

Cendant Did Not Forward a Commitment Letter Until August 10, 2001.

On August 10, 2001, nearly two months after it had completed the application and sent the June 12, 2001 letter guaranteeing financing, Cendant forwarded Mr. and Mrs. Mendes what it claims is a commitment letter. A. Mendes Aff., ¶4, Ex. D. Cendant never addressed or discussed the letter with Mr. and Mrs. Mendes. It told them to sign the letter and then return it. A. Mendes Dep., pp. 187. Mr. and Mrs. Mendes also did not understand that they needed to execute a commitment letter to obtain the loan. A. Mendes Dep. pp. 192-30, 126-27.

Mr. and Mrs. Mendes also understood that the language set forth in the letter indicated only that additional income, which they had earned, would satisfy any deficiencies as to rent. A. Mendes Dep., p. 169. The letter indicated:

> Appraiser to provide the net market rental for all 3 units for the area to evidence that PITI doesn't exceed 75% of the market rental (also to obtain additional income to lower ratios).

Id.[9]

The language in the parenthetical indicated to Mr. and Mrs. Mendes that their income needed to satisfy relevant ratios. A. Mendes Dep., p. 169. They already understood that they possessed sufficient income because Cendant had so indicating in approving them for the loan. Accordingly, this provision did not indicate that net rents needed to exceed the monthly mortgage payment.

Cendant also forwarded this letter after it had received on July 11, 2006 an appraisal listing total rents of $2,075 as to all units and after an analysis had been

---

[9] Cendant had never made such a representation during the two month loan process. A. Mendes Aff., ¶9.

9

completed as to whether Mr. and Mrs. Mendes qualified for an FHA loan. Mendes Aff., ¶7, Ex. G. Cendant never indicated any requirement as to total rents in the month preceding the forwarding of the alleged commitment letter.

<u>Cendant Appointed Lawyers to Close the Loan to Mr. and Mrs. Mendes.</u>

Cendant also continued to represent that it would make the loan. Attorneys, which it had hired, forwarded a letter to Mr. and Mrs. Mendes just prior to the closing date indicating that the closing would occur. Mendes Aff., ¶5, Ex. E. Cendant did not refuse to make the loan until just several days before the scheduled day of the closing. A. Mendes Dep., p. 173.

<u>Cendant Failed to Advise of Other Available Loans.</u>

Cendant also failed to offer Mr. and Mrs. Mendes any options as to other loans for which they could qualify. A. Mendes Dep., p. 190. Cendant, however, had indicated that it had the ability to do so. In its June 12, 2001 letter, it stated:

> FLEXIBILITY. Although you've been approved for a specific loan amount, we realize that your loan requirements may change. Simply call us if you need to change your loan amount, or the term or type of loan.

A. Mendes Aff., ¶4, Ex.D.

Mr. and Mrs. Mendes earned sufficient income to qualify for a loan which required them to produce a down payment of ten percent of the price of 1–3 Chilson Avenue. Various firms offered loans which required ten percent down payments and as to which Mr. and Mrs. Mendes qualified. Obtaining such a loan would have permitted Mr. and Mrs. Mendes to purchase 1-3 Chilson Avenue. Expert Report of Connor Shortsleeve, p. 3. If necessary, Mr. and Mrs. Mendes also had the ability to obtain from

Mrs. Mendes' mother a gift in an amount necessary to obtain a mortgage to provide a ten percent down payment. Affidavit of Doris Mendes, ¶¶1-4.

Following Cendant's Refusal to Fund a Loan to Mr. and Mrs. Mendes the
Terms of Their Purchase and Sale Agreement Expired and the
<u>Owner Sold the Property to Anther Buyer.</u>

Following Cendant's refusal to make a loan to Mr. and Mrs. Mendes the terms of their purchase and sale agreement expired. They no longer had the right to purchase the property. The owner then sold the home to another buyer within thirty days. A. Mendes Aff., ¶12. Accordingly, Mr. and Mrs. Mendes lost the opportunity to purchase the Chilson Avenue property. A. Mendes, ¶12.

Cendant Has Produced No Evidence That Regulations Existed in
<u>2001 Requiring Net Rents to Exceed the Monthly Mortgage Payment.</u>

Claire Taylor, an individual who acted as a Cendant supervisor in 2001, has submitted an affidavit to which a copy of alleged FHA guidelines are attached. The guidelines, however, are dated 2003. Cendant has offered no evidence as to regulations effective in 2001. Accordingly, the regulations dated 2003 need not be considered.

Moreover, Cendant refused to provide any of these standards during discovery. In fact, in its discovery response, Cendant indicated that the alleged FHA guidelines requiring net rents to exceed the mortgage amount had no relevance. Cendant responded as follows:

<u>INTERROGATORY NO. 1.</u>

>  Please list by chapter, part and paragraph each of the specific regulations on which Cendant relied in determining that the Mendes did not qualify for an FHA loan or loan guaranteed by the FHA.

11

ANSWER NO. 1.

PHH Mortgage objects to this interrogatory because it is beyond the scope of discovery permitted by Federal Rule of Civil Procedure 26(b), and because it seeks the discovery of information that is not relevant to any claim or defense of the parties.

Cendant confirmed the irrelevance of the FHA guidelines through its response to the following document request made by Mr. and Mrs. Mendes:

REQUEST NUMBER 17:

All documents which evidence, refer to mention or concern any standards applicable to obtaining FHA approval of any mortgage to be made in 2000 or 2001.

RESPONSE NUMBER 17:

PHH Mortgage objects to this request because it is beyond the scope of discovery allowed by Federal Rule of Civil Procedure 26(b).

Cendant made the above responses because it lacked, and still lacks, a copy of any standards/regulations effective in 2001. This fact results from Cendant's error because Clair Taylor admitted in her deposition that Cendant currently should possess a copy of the regulations effective in 2001. Taylor Dep., pp. 26-27.[10] Based on the above, the Court should strike Cendant's reference to these guidelines. Fed. R. Civ. P. 37.

Furthermore, as noted above, Richard Luongo, the individual who created the loan application, indicated that Cendant did not need to follow FHA guidelines. Cendant could deviate. Luongo Dep., pp. 63-64, 99-102. Accordingly, Cendant did not apply this alleged requirement in June 2001.

---

[10] Deposition pages of Ms. Taylor's deposition are attached as Exhibit D to Affidavit of Christopher J. Trombetta.

<u>Cendant Also Failed to Treat the Property as a Two-Family Property.</u>

The alleged FHA guidelines did not prevent treating 1-3 Chilson Avenue as a two-family property. The property is divided such that the two smaller units are located on one side of the property. One unit is on the first floor, the other unit is on the second floor. The units share a common entrance. A. Mendes Dep., pp. 38-40, 42. The units could have been combined to form a two-family home. The first floor unit simply could have been treated as a bedroom with a den. Anticipated net rents from the large unit approximated $955.[11] Had Cendant treated the property as a two family, Mr. and Mrs. Mendes possessed sufficient income to purchase it. <u>See</u> Shortsleeve Expert Report, pp. 2-3.

ARGUMENT

1. <u>Cendant Has Not Satisfied the Summary Judgment Standard.</u>

Summary judgment is inappropriate where genuine issue as to any material fact exists. Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

The relevant evidence creates a genuine issue of material fact. Thus, summary judgment should not enter in favor of Cendant.

2. Cendant Breach the Contract Formed By
<u>Mr. and Mrs. Mendes Reliance on Cendant's Promise To Provide a Loan.</u>

Under Massachusetts law, a party's reliance on a promise made by another which could induce action or forbearance is binding as a contract to the extent necessary to avoid injustice. <u>Loranger Constr. Corp. v. E.F. Hauserman Co.</u>, 376 Mass. 757, 760, 384

---

[11] The largest unit would have needed to rent for $1,275 to obtain a net rent of $955.

13

N.E.2d 176, 177-78 (1978); Cataldo Ambulance Service, Inc. v. City of Chelsea, 426 Mass. 383, 386, 688 N.E.2d 959, 960-61 (1998); McAndrew v. School Committee of Cambridge, 20 Mass. App. Ct. 356, 480 N.E.2d 327 (1985). Massachusetts courts do not use the terms promissory estoppel in such situations only because those terms merely cause confusion. Loranger Constr. Corp., 376 Mass. at 760, 384 N.E.2d at 177-78 (1978).

In the present case, Cendant forwarded a June 12, 2001 letter in which it agreed, or at least promised, to provide a mortgage loan. Mr. and Mrs. Mendes relied detrimentally on that letter. They did not seek financing from another company, executed a purchase and sale agreement, and provided a $9,000 deposit.

Mr. and Mrs. Mendes failure to seek alternative financing from another entity caused them to lose the opportunity to purchase of 1-3 Chilson Avenue. When Cendant refused to provide Mr. and Mrs. Mendes with financing, the terms of their purchase and sale agreement expired. They no longer had the right to purchase 1-3 Chilson Avenue. The owner of 1-3 Chilson Avenue then sold the property to another buyer within thirty days of the expiration of, the terms of the Mendes, purchase and sale agreement.[12]

Mr. and Mrs. Mendes also qualified for an FHA loan. Shortsleelve Expert Report, pp. 1-2. They also qualified for a loan to purchase the property from another entity (or event Cendant) pursuant to a different loan program. Cendant's actions prevented them from obtaining such financing. Shortsleeve Expert Report p. 1-2. This conclusion also is reinforced by Mr. and Mrs. Mendes' ability to purchase a single family

---

[12] Mr. and Mrs. Mendes also did not seek alternative financing because Cendant had indicated that they could not obtain a loan to purchase the property. Cendant never offered any alternative loan programs and never indicated that any such loans existed. Based on their reliance on this representation they lost the opportunity to purchase the property.

14

home for $269,000. With their earned and rental income Mr. and Mrs. Mendes could have purchased 1-3 Chilson Avenue.[13]

### 3. Cendant Breached the Contract Embodied in the June 12, 2001 Cendant Letter.

Mr. and Mrs. Mendes also formed a contract with Cendant. They agreed to pay fees associated with loan to be provided by Cendant. In exchange, Cendant agreed to provide a loan. This exchange created a contract. Cendant breached the contract by not making the loan.

### 4. The Commitment Letter Did Not Relieve Cendant of Its Obligation to Make the Loan to Mr. and Mrs. Mendes.

Cendant claims that Mr. and Mrs. Mendes execution of a commitment letter relieved of any obligation to make a loan. Cendant forwarded that letter two months after it had sent the June 12, 2001 letter promising financing and just more than one week before closing. The forwarding of such a letter, even if considered an agreement, which it is not, could not relieve Cendant of its obligation. Cendant forwarded the letter after the damage already had been done. Mr. and Mrs. Mendes had lost the opportunity to purchase the property based on their reliance on the June 12, 2001 letter and Cendant's refusal to provide the loan.

Furthermore, the commitment letter did not indicate that net rents needed to exceed seventy-five percent of the monthly mortgage amount. The parenthetical to the relevant paragraph of the letter indicated only that Mr. and Mrs. Mendes needed to possess sufficient income to close. Cendant already had confirmed that they possessed such income. Accordingly, if the court construes the commitment letter against Cendant,

---

[13] The present value interest factor as to a thirty year loan with an interest rate of 8.5 percent is 130.05. Accordingly, Mr. and Mrs. Mendes could have obtained the extra $30,000 needed for the purchase of 1-3 Chilson Avenue with an extra payment of only $269 per month.

15

it should find that it does not require Mr. and Mrs. Mendes to obtain net rents which exceeded the monthly mortgage amount.

Finally, the alleged agreement embodied in the commitment letter is not supported by consideration. Execution of the letter did not alter what Mr. and Mrs. Mendes then understood they would receive, a mortgage loan. Thus, the alleged commitment letter did not create a binding contract or modification thereof. Tri-City Concrete Co. v. L.A. Constr. Co., 343 Mass. 425, 427-28, 179 N.E.2d 319, 320-21 (1962) (no binding contract modification due to lack of consideration).

### 5. Cendant Engaged in Unfair Activity Which Constitutes a Violation of Chapter 93A.

In determining whether or not as practice is unfair, as opposed to deceptive, the court should evaluate the equities between the parties. Swanson v. Barkers Life Co., 389 Mass. 345, 349, 450 N.E.2d 477, 580 (1983). A plaintiff's inability to understand agreements is a factor to be considered when the defendant seeks to use such agreements to impose or avoid liability. Billingham v. Dornemann, 55 Mass. App. Ct. 166, 178-79, 771 N.E.2d 166, 157-76 (2002). What a defendant knew or should have known may be relevant determining unfairness. Swanson, 389 Mass. At 349, 450 N.E.2d at 580; See also Billingham, 55 Mass App. Ct. at 176-77, 771 N.E.2d at 175.

In determining whether a deceptive act occurred, no interest to deceive need be shown. In fact, an act may be deceptive even absent any showing of negligence as to the commission of the act. Swanson, 389 Mass. At 349, 450 N.E.2d at 580.

In the present case, Cendant had knowledge of alleged requirements concerning FHA loans. It failed to communicate such requirements to Mr. and Mrs. Mendes.

16

Instead, Cendant forwarded a letter guarantying financing. Mr. and Mrs. Mendes relied on that letter.

Two months later and just days before closing, Cendant directed Mr. and Mrs. Mendes to sign an alleged commitment letter. Cendant provided no explanation as to its terms. Cendant also indicated that they needed to sign the document to obtain the loan. As unsophisticated first-time buyers, they executed and returned the letter to Cendant. Cendant then used the letter to deprive them of their loan. They relied on alleged conditions appearing in the letter that had never been disclosed to Mr. and Mrs. Mendes.

Cendant also failed to use correct data in determining if Mr. and Mrs. Mendes qualified for a loan. Such an error also resulted in their receiving financing for the purchase. Cendant also never offered alternative financing although Mr. and Mrs. Mendes qualified. Such financing would have permitted Mr. and Mrs. Mendes to purchase the Chilson Avenue property.

Significant also is that Cendant refunded the application fee although not required to do so. Cendant did this because it knew that it had botched the loan process to the detriment of Mr. and Mrs. Mendes. Unfortunately, the refund of $350 did not compensate Mr. and Mrs. Mendes for the loss they suffered as the result of losing the Chilson Avenue property.

The actions set forth above constitute unfair and deceptive acts. Accordingly, Cendant's motion to dismiss Mr. and Mrs. Mendes Chapter 93A claim should be denied.

## CONCLUSION

Based on the foregoing, Cendant's Summary Judgment Motion should be denied.

ANTHONY AND DORIS MENDES,

By their attorney,
LAW OFFICE OF CHRISTOPHER J. TROMBETTA

/s Christopher J. Trombetta
Christopher J. Trombetta
310 North Main Street, Suite 6
Mansfield, MA  02048
(508) 339-5900

October 24, 2006

## CERTIFICATE OF SERVICE

I, Christopher J. Trombetta, do hereby certify that on October 24, 2006 a copy of the foregoing document has been served via electronic mail on opposing counsel in this action.

/s Christopher J. Trombetta
Christopher J. Trombetta